UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| RACHEL LEE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED OF OMAHA LIFE INSURANCE )<br>COMPANY d/b/a MUTUAL OF OMAHA, )<br>)<br>Defendant. ) | Case No.  3:20-cv-00026-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant United of Omaha Life Insurance Company's Motion for Judgment on the Pleadings, which the Court will construe as a Motion for Summary Judgment [R. 24], and Plaintiff Rachel Lee's Motion for Summary Judgment.  [R. 45.] Plaintiff Rachel Lee is suing United of Omaha for denying her life insurance claim after her husband suffered a heart attack and died approximately one month after starting a new job with Topy America, Inc.  For the reasons that follow, Defendant United of Omaha's Motion for Judgment on the Pleadings, which the Court will construe as a Motion for Summary Judgment, will be GRANTED and Plaintiff Rachel Lee's Motion for Summary Judgment will be DENIED.

**I**

Joseph Lee started working at Topy America, Inc. on September 25, 2019.  [R. 19-1 at 279.]  On the same day, Mr. Lee enrolled in basic life insurance that provided coverage at one times his annual salary of approximately $35,000, and voluntary life coverage that provided additional coverage of $80,000.  *Id.*  Mr. Lee completed and signed his benefits enrollment form designating his spouse, Rachel Lee, as the sole primary beneficiary.  *Id.* at 173–74.  On October

21, while at work, Mr. Lee suffered a heart attack and was hospitalized. [R. 1-1 at 4.] Mr. Lee died five days later on October 26. [R. 19-1 at 180.] Mrs. Lee timely filed a claim with United of Omaha for life insurance benefits totaling $115,000, along with the proper documentation and a copy of Mr. Lee's death certificate. *Id.* at 175–80. On December 27, United of Omaha denied Mrs. Lee's claim in its entirety, stating that "no benefits are payable." *Id.* at 344–48.

Mrs. Lee filed this claim in Franklin Circuit Court on March 30, 2020, and the case was removed to federal court on April 22.[1] [R. 1.] On August 4, United of Omaha filed a Motion for Judgment on the Pleadings, arguing that the plain language of the insurance policies shows that "no benefits were ever effective." [R. 24 at 1.] On September 29, Mrs. Lee filed a Motion for Summary Judgment, arguing that Mrs. Lee is entitled to benefits under both the basic and voluntary life policies. [R. 45-1 at 4.] In the alternative, Mrs. Lee argues that the policies are ambiguous and therefore must be construed in her favor. *Id.* at 7. The motions are now ripe for review.

## II

### A

Under Federal Rule of Civil Procedure 12(d), if a party files a motion for judgment on the pleadings and includes matters outside the pleadings that the district court does not exclude, the motion should be construed as one for summary judgment. Fed. R. Civ. P. 12(d); *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502 (6th Cir. 2006). Conversion of a motion for judgment on the pleadings into a motion for summary judgment is permissible, so long as "all parties in fact had a sufficient opportunity to present pertinent materials." *Northville*

---

[1] In the Complaint, Mrs. Lee sued both United of Omaha and Topy America, Inc. [R. 1-1 at 5–6.] However, on December 31, 2020, the parties jointly agreed to dismiss all claims against Topy with prejudice, and Topy was dismissed with prejudice on January 5, 2021. [R. 51; R. 52.]

*Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010) (quoting *Max Arnold*, 452 F.3d at 504.); *see also Bates v. Green Farms Condominium Association*, 958 F.3d 470, 484 (6th Cir. 2020). The Sixth Circuit has held that in some circumstances, a document that is not "incorporated by reference or attached to a complaint may still be considered part of the pleadings." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999). In the life insurance policy context, documents may be considered without converting to a motion for summary judgment if "a document is referred to in the complaint and is central to the plaintiff's claim." *Id.* This gives district courts the opportunity to consider documents at the core of an insurance dispute without requiring conversion to a Rule 56 motion. *Id.* However, conversion to a motion for summary judgment permits the court to look beyond the pleadings and is appropriate in this case given United of Omaha's use of the administrative record and the subsequent procedural history. *See generally Max Arnold*, 452 F.3d at 502–03.

Here, Mrs. Lee argued on September 29 that United of Omaha's motion should be construed as a motion for summary judgment because the motion was styled as a motion for summary judgment and referenced portions of the administrative record. [R. 46.] This put United of Omaha on notice and provided them with the opportunity to rebut Mrs. Lee's argument or present additional material pertinent to the motion. *See Northville Downs*, 622 F.3d at 585. In its response on October 22, United of Omaha did not dispute, or even address, Mrs. Lee's argument that its motion for judgment on the pleadings should be construed as a motion for summary judgment. Therefore, because United of Omaha does not dispute that its motion should be converted to a motion for summary judgment and the motion refers to portions of the administrative record that were not included in the pleadings, the Court will construe United of Omaha's Motion for Judgment on the Pleadings as a Motion for Summary Judgment.

3

**B**

a

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251–52). In making this determination, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v.*

*Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999).

**b**

This dispute boils down to policy language interpretation. "When a plan is governed by ERISA, federal courts apply federal common law rules of contract interpretation to interpret plan provisions." *CHS/Community Health Sys., Inc. v. Ledford*, 204 F. Supp. 3d 983, 988 (M.D. Tenn. 2016) (citing *Univ. Hosp. of Cleveland v. S. Lorraine Merch. Ass'n Health and Welfare Plan & Trust*, 441 F.3d 430, 437 (6th Cir. 2006)); *see also Cassidy v. Akzo Nobel Salt*, 308 F.3d 613, 615 (6th Cir. 2002). "Courts must give effect to all words, phrases, and clauses in interpreting a contract, avoiding interpretations that would render any part of the contract surplusage or nugatory." *Community Health Sys.,* 204 F. Supp. 3d at 988 (quoting *Tabernacle– The New Testament Church, v. State Farm Fire & Cas. Co.*, 616 F. App'x 802, at *808 (6th Cir. June 22, 2015)); *see also Bd. of Trs. v. Moore*, 800 F.3d 214, 222–23 (6th Cir. 2015) (quoting *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)) ("When interpreting ERISA plan provisions, general principles of contract law dictate that [the Court] interpret the provisions according to their plain meaning in an ordinary and popular sense.")

Ambiguity in contract language should be "construed in favor of the employee." *Cornish v. United States Life Ins. Co.*, 690 F. Supp. 2d 581, 585–86 (W.D. Ky. June 3, 2009) (citing *Perez v. Aetna Life Ins. Co.*, 150 F. 3d 550, 555–58 (6th Cir. 1998)). A contract term is ambiguous if it has "two reasonable interpretations. *Id.* (citing *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir. 1992).

**c**

The parties dispute whether United of Omaha owes Mrs. Lee any benefits under the terms of her husband's basic and voluntary life insurance policies.[2] [R. 45-1 at 4.] Under the terms of the policies, Mr. Lee was eligible for insurance "on the day following completion of an Eligibility Waiting Period of 30 days." [R. 19-1 at 14, 60.] The eligibility waiting period is defined as "a continuous period of Active Work that an Employee must satisfy before becoming eligible for insurance." [R. 19-1 at 14.] The policies define "Active Work" as "performing the normal duties of his or her regular job for the Policyholder on a regular and continuous basis 30 or more hours each week." *Id.* Further, both policies include the following "When Insurance Begins" provision:

> An eligible Employee will become insured on the latest of the day:
> a) The Employee begins Active Work; or
> b) The Employee submits a Written Request to enroll for insurance, if applicable.
> If the Employee is not Actively Working on the day insurance would otherwise begin, insurance will begin on the day the Employee returns to Active Work.[3]

*Id.*

The insurance policies contain a provision that provides exceptions to when insurance begins. The provision states that for employees who are:

> a) Totally Disabled;
> b) Confined in a Hospital as an inpatient;
> c) Confined in any institution or facility other than a Hospital; or
> d) Confined at home and under the care or supervision of a Physician;
> On the day insurance is to begin will not take effect until the day after the Employee has completed one full day of Active Work.

*Id.* at 6.

---

[2] The parties agree that the relevant eligibility language of the two life insurance policies at issue is essentially identical. [R. 24-1 at 2; R. 45-1 at 4.]
[3] The only difference between the two policies is that under the Supplemental Policy, insurance can also begin if the company approves evidence of insurability, if that is required. [R. 19-1 at 62.]

6

Mr. Lee began "Active Work" on the day he was hired, which was September 25, 2019. *Id.* at 279. Mrs. Lee argues that when Mr. Lee enrolled in insurance on September 25, 2019, the same day he was hired, he satisfied the "When Insurance Begins" provision. [R. 45-1 at 5.] Mrs. Lee states that her husband satisfied the eligibility provisions of the policies because he did not die until after the thirty-day waiting period had concluded, and that the policies do not require an employee who has started actively working to return to active work after the thirty-day waiting period has run. *Id.* Mrs. Lee argues that the exception to when insurance begins provision is meant to apply to employees who are off work for medical reasons when they elect insurance benefits and does not apply to her husband because he began his "Active Work" on September 25, 2019, which is the day he started working at Topy America, Inc. *Id.* at 6–7. Finally, Mrs. Lee argues that at the very least, the policies are ambiguous and therefore must be construed in her favor. *Id.* at 7.

Conversely, United of Omaha maintains that under the policy provisions, Mr. Lee clearly did not meet the eligibility requirements. [R. 24-1 at 7.] United of Omaha states that given Mr. Lee's hire date, the earliest he would have been eligible for insurance following the thirty-day waiting period was October 26, 2019. *Id.* However, Mr. Lee suffered a heart attack on October 21 and never returned to work. *Id.* United of Omaha argues that because the eligibility waiting period requires a "continuous period of active work," which Mr. Lee did not satisfy for the entire thirty-day period, he never became eligible for insurance under the policies. *Id.*

United of Omaha further argues that even if Mr. Lee had become eligible for insurance after the thirty-day waiting period, the insurance never became effective

7

because Mr. Lee was not working on the day his waiting period ended. *Id.* at 8. The relevant "When Insurance Begins" provision states that "[i]f an Employee is not Actively Working on the day insurance would otherwise begin, insurance will begin on the day the Employee returns to Active Work." [*Id.* at 9 quoting R. 19-1 at 15, 62.] Therefore, according to United of Omaha, because Mr. Lee never returned to active work, the insurance policies never became effective.

The language and plain meaning of the policies in question make it clear that Mr. Lee failed to meet the eligibility waiting period requirements of the basic and voluntary life insurance policies. *See Bd of Trs. v. Moore*, 800 F.3d at 222–23. Mr. Lee started working for Topy America, Inc. on September 25, 2019, and filled out an enrollment form for the two life insurance policies on that date. [R. 19-1 at 279.] The policies make clear that Mr. Lee's insurance could only become effective after a waiting period of thirty days, during which time Mr. Lee was required to engage in a "continuous period of active work."[4] [R. 19-1 at 14, 60.] According to the plain language of the policies, merely being employed by Topy America, Inc. for thirty days is not enough—Mr. Lee needed to be employed by *and* engage in a continuous period of active work for thirty days for the policies to become effective. *Id.*

---

[4] From a policy perspective, although Mrs. Lee did not raise the argument of unconscionability, it may be questioned whether a thirty-day waiting period for life insurance is unconscionable. Unconscionability is the "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Garrett v. State Auto Property & Cas. Ins. Co.*, 2009 WL 5125812, at *5 (W.D. Ky. Dec. 21, 2010) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). Under a thirty-day waiting period system, individuals like Mrs. Lee are arguably unfairly prevented from receiving life insurance benefits. However, it is also true that a company may require a waiting period to ensure that individuals are committed to the company and plan to stay for at least some period of time before permitting employees to take advantage of certain employment benefits. In addition, this waiting period is common practice and is known up front to employees when they sign up for insurance. Therefore, the thirty-day waiting period in this case is not unconscionable.

On October 21, which is fewer than thirty days after Mr. Lee commenced employment at Topy America, Inc. Mr. Lee tragically suffered a heart attack. [R. 24-1 at 2.] Following the heart attack, there is no evidence that Mr. Lee returned to active work after October 21. Mr. Lee therefore did not engage in a continuous period of active work during the eligibility period as required by the life insurance policies.

Because the eligibility requirements of the waiting period as stipulated in the policy provisions were not met, the Court need not determine whether the "Exceptions to When Insurance Begins" provision applies to employees at the time they elect benefits or after the thirty-day waiting day waiting period has elapsed. [R. 24-1 at 8; R. 45-1 at 6.] This is because the policy provisions regarding eligibility all work together in tandem, and even if the Court construes the insurance as beginning when Mr. Lee commenced active work on September 25, Mr. Lee was still not eligible for benefits because he did not fulfill the requisite waiting period requirement. [*See* R. 19-1 at 14.]

### III

The Court is sympathetic to Mrs. Lee's situation. However, after examining the applicable life insurance policy provisions, the plain language makes it clear that Mrs. Lee is not entitled to benefits. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant United of Omaha's Motion for Judgment on the Pleadings, which the Court construes as a Motion for Summary Judgment **[R. 24]** is **GRANTED**;

2. Plaintiff Rachel Lee's Motion for Summary Judgment **[R. 45]** is **DENIED**; and

3. Judgment shall be entered promptly.

This the 22nd day of February, 2021.

*Gregory F. Van Tatenhove*
United States District Judge